IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM MUTUAL, <br>     AUTOMOBILE INSURANCE <br>     COMPANY, and <br><br> STATE FARM FIRE AND <br>     CASUALTY COMPANY <br><br>     Plaintiffs, <br><br> v. <br><br> TZ'DOKO V'CHESED OF <br>     KLAUSENBERG, <br> BETH CHANA, <br> YESHIVA CHATZAR HAKODESH., <br> YESHIVA SHEARITH HAPLETH, and <br> YESHIVA YESODE HATORAH <br><br>     Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br><br> NO. 06-3040 |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                                   February 26, 2008

      Presently before the Court are Defendants Beth Chana, Yeshiva Shearith Hapleth, and Yeshiva Yesode Hatorah's Motion to Vacate Default Judgment and Dismiss (Docket No.42) and Plaintiffs' Answer in Opposition (Docket No. 50); as well as Defendant Tz'Doko V'Chesed of Klausenberg's Motion to Dismiss or Transfer Venue (Docket No. 60) and Plaintiffs' Response (Docket No. 63). For the reasons stated below, Defendants Beth Chana, Yeshiva Shearith Hapleth, and Yeshiva Yesode Hatorah's Motion to Vacate is **GRANTED** and their Motion to Dismiss is **DENIED**. Defendant Tz'Doko V'Chesed of Klausenberg's Motion to Dismiss or Transfer Venue is **DENIED**.

I.  BACKGROUND

This case arises out of another matter previously before this Court.  In <u>State Farm Mutual Automobile Insurance Co., et al. v. Metropolitan Family Practice, et al.</u> (No. 03-969), the same plaintiffs as in this case, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (referred to collectively herein as "State Farm"), accused Metropolitan Family Practice (MFP), among other defendants, of engineering an insurance fraud scheme in which MFP submitted false insurance claims to State Farm. (Compl. ¶ 22.)  On April 17, 2007, this Court entered judgment against MFP.

State Farm now alleges that MFP has drained itself of the necessary funds to pay this judgment by transferring hundreds of thousands of dollars to various organizations in Brooklyn, New York. (Compl. ¶ 15.)  State Farm asserts that these transfers were fraudulent and brings claims against the alleged recipients, asserting that the transfers violated the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. Cons. Stat. §§ 5101-5110, and/or the New York Fraudulent Conveyance Statute, N.Y. Debt. & Cred. §§ 270-281.  Both of these state laws provide generally that it is fraudulent to transfer funds from an insolvent debtor, or a debtor who will become insolvent as a result of the transfer, to a recipient who provides nothing of value in return. 12 Pa. Cons. Stat. §§ 5105; N.Y. Debt. & Cred. § 275.  According to State Farm, these transfers rendered MFP insolvent and were designed to frustrate enforcement of the judgment. (Compl. ¶¶ 28-29; 35-36.)  State Farm further alleges that the defendants should be liable for punitive damages because their conduct was "malicious and outrageous." (<u>Id.</u> ¶¶ 30, 38.)

The Complaint, filed on July 11, 2006, names five defendants: (1) Tz'Doko V'Chesed of Klausenberg, (2) Beth Chana, (3) Yeshiva Chatzar Hakodesh, (4) Yeshiva Shearith

Hapleth, and (5) Yeshiva Yesode Hatorah. (Compl. ¶¶ 2-6.)  One of the defendants, Tz'Doko V'Chesed, timely filed an answer on May 14, 2007. (Docket No. 23.)  The other four defendants have never filed an answer.  On May 16, 2007, State Farm filed a motion seeking default judgments against these other defendants (Docket No. 24), which this Court granted on June 6, 2007. (Docket No. 26.)  On December 3, 2007, three of the defendants against whom default judgments had been ordered—Beth Chana, Yeshiva Shearith Hapleth, and Yeshiva Yesode Hatorah (the "Moving Defendants")—filed the present motion, which seeks to vacate the default judgment and dismiss the Moving Defendants from the action.

## II. DISCUSSION

The Moving Defendants seek relief from the default judgment on two grounds.  First, the Moving Defendants argue that, under Federal Rule of Civil Procedure 60(b)(4), the Court must vacate the default judgment and dismiss them from the action because the judgment is void. (Defs. Beth Chana, Yeshiva Shearith Hapleth, and Yeshiva Yesode Hatorah's Mem. Supp. Mot. Vacate and Dismiss 6-15.)  Second, under Rule 60(b)(1), they argue that the court should exercise its discretion and vacate for reasons of "mistake, inadvertence, surprise, or excusable neglect." (Id. at 10-11.)  In addition, the Moving Defendants argue that, if their motion to vacate is granted but the case is not dismissed on the jurisdictional grounds, the Court should still dismiss based on the doctrine of forum non conveniens or transfer the venue to the Eastern District of New York. (Id. at 15-24.)

In a separate motion, Tz'Doko V'Chesed of Klausenberg argues that the case should be dismissed for lack of subject matter jurisdiction, or, in the alternative, requests that the Court transfer the venue.

Each of these issues is considered in turn.

### A. Whether to Vacate and Dismiss

The Moving Defendants argue that the default judgment should be vacated and the case dismissed because (1) service was improper; (2) there were not sufficient contacts to find personal jurisdiction under the Pennsylvania long-arm statute and/or the U.S. Constitution; and (3) the Court lacked subject matter jurisdiction over Yeshiva Shearith Hapleth and Yeshiva Yesode Hatorah because the amount in controversy did not exceed $75,000. In its separate motion, Defendant Tz'Doko V'Chesed of Klausenberg also argues for dismissal because this Court lacks subject matter jurisdiction.

#### 1. Service of Process

When sufficiency of service of process is challenged, the party asserting the validity of service bears the burden of proof. Grand Entm't. Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993). The party must prove that service was effective by a preponderance of the evidence. Mowafy v. Noramco of Del., Inc., No. 05-733, 2007 WL 2828013, at *2 (D. Del. Sept. 27, 2007). To meet this burden, "[f]actual contentions regarding the manner in which service was executed may be made through affidavits, depositions, and oral testimony." Villanova v. Solow, No. 97-6684, 1998 WL 643686, at *1 (E.D. Pa Sept. 18, 1998).

Under the Federal Rules of Civil Procedure, service may be effected "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(h)(1)(B), or by "following state law for serving a summons . . . in the state where the district court is located or where service is made." Id. R. 4(e) (referenced by id. R. 4(h)(1)(A)).

Under the law of Pennsylvania, where this Court is located, service may be effected on a non-Pennsylvania resident by delivering the summons "at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." Pa. R. Civ. P. 402(a)(2)(iii). Interpreting this Pennsylvania rule, the Third Circuit has held that a person for the time being in charge "must either be an individual with some direct connection to the party to be served or one whom the process server determines to be authorized, on the basis of her representation of authority, as evidenced by the affidavit of service." Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 486 (3d Cir. 1993). The Pennsylvania Supreme Court has cited this decision with approval, and after analyzing a series of Pennsylvania cases faced with the question of what constitutes a person "for the time being in charge of," concluded, "[t]he common thread among these cases is that there must be a sufficient connection between the person served and the defendant to demonstrate that service was reasonably calculated to give the defendant notice of the action against it." Cintas Corp. v. Lee's Cleaning Servs., Inc., 700 A.2d 915, 920 (Pa. 1997)

   Here, Plaintiffs have provided affidavits indicating that a process server personally delivered the summons and complaint to each of the Moving Defendants at multiple addresses. (See Defs.' Mot. Vacate, Ex. A.) The affidavits further claim that each person accepting service on behalf of his or her respective organization represented that he or she was authorized to do so. (Id.) The Moving Defendants countered this evidence with declarations by the current office managers of each organization, each of which stated, among other things, that Malky Meyer, one of the people alleged to have accepted service, was "not (and never has been) an office manager . . . , much less an individual authorized to accept service." (Herskovitz Decl. ¶

5

10; Lipschitz Decl. ¶ 10; Wieder Decl. ¶ 10.) However, the declarations make no mention of who Meyer is; it is unclear that they even know of anyone by that name. At the subsequent hearing on the issue of service, the Moving Defendants then represented to the Court that Meyer was a teacher at the Beth Chana school. (Hr'g Tr. 10:14-16, Jan. 29, 2008.) This was the first time this fact came to light; State Farm indicated that it had never been told this information either. (Id. at 18:22-24.) No further admissible evidence—such as a denial that Meyer told the process server she was authorized to accept process—was offered by the Moving Defendants concerning Meyer.[1] Given these facts, even if we assume the Moving Defendants' representations concerning Meyer's occupation to be true, the Court concludes that service was effective under Pennsylvania law. A school teacher at a location with offices for all three Moving Defendants, which are acknowledged to be interrelated organizations, has a "direct connection to the party to be served." See Cintas, 700 A.2d at 920. Providing service to such a person, especially one who represents herself to be an agent, would be "reasonably calculated to give the defendant notice of the action against it." See id. Compare Grand Entm't., 988 F.2d 476 (service ineffective where summons delivered at an office building, in which defendant was one of many companies, to the building's receptionist who was not employed by the defendant), and Trzcinski v. Prudential Prop. and Cas. Ins. Co., 597 A.2d 687 (Pa. Super. Ct. 1991) (service ineffective where summons delivered to a secretary of a law firm that had previously represented

---

[1]. Instead, the Moving Defendants' counsel speculated as to why Meyer accepted service, noting that Meyer "was probably more nervous that some stranger walked over to her than anything else, and she probably, just, you know, shook her head or waved her hands." (Hr'g Tr. 16:12-14.) Counsel stated further, "[The process server] probably walked in, saw somebody and said here it is. We all know how service is usually done . . . . [the process servers] will walk in, they will find somebody . . . and all of a sudden the person . . . is automatically authorized to accept service." (Id. 10:20-11:6.) If any of this were proven to be true, these arguments would have some merit. However, even though the Moving Defendants presumably have access to Meyer, as an employee, they chose to speculate as to the circumstances surrounding service, rather than providing evidence, such as an affidavit or testimony.

the defendant), and Fisher v. Kemble Park, Inc., 142 A.2d 353 (Pa. Super Ct. 1958) (service ineffective where summons delivered to janitor who worked at the defendant's office, but was not employed by the defendant), with Cintas, 700 A.2d at 920 (service effective where summons delivered to receptionist employed by defendant), and Hopkinson v. Hopkinson, 470 A.2d 981 (Pa. Super. Ct. 1984) (same), overruled on other grounds by Sonder v. Sonder, 549 A.2d 155 (Pa. Super. Ct. 1988). For all the above reasons, the Court concludes that service of process was effective, and therefore the default judgment is not void for this reason.

### 2. Personal Jurisdiction

The Moving Defendants' contention that the default judgment is void because the Court lacked personal jurisdiction is without merit. It is well established that, in determining whether personal jurisdiction is proper, a district court must undertake a two part inquiry.[2] The first question is whether there is jurisdiction under the forum state's long-arm statute, and the second is whether finding jurisdiction comports with the Due Process Clause. IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

As to the first part of the inquiry, under the Pennsylvania long-arm statute, a court may exercise jurisdiction over anyone who has "[c]aus[ed] harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa. Cons. Stat. § 5322(a)(4). According to the Complaint,[3] State Farm was defrauded in Pennsylvania when its

---

2. Because service of process was proper, as discussed above, the Moving Defendants' failure to answer the Complaint and timely raise the personal jurisdiction issue could constitute waiver of the defense. See Fed R. Civ. P. 12(h)(1). However, because the Court has personal jurisdiction over the Moving Defendants, as explained below, we need not consider this question.

3. "[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret Savs. Bank, F.A. v.
(continued...)

debtor transferred funds to the Defendants. The Complaint contends that the Defendants' part in this scheme—accepting the funds in New York—was "malicious and outrageous." (Compl. ¶¶ 30, 38.) These allegations clearly satisfy the Pennsylvania long-arm statute because, if proven true, harm was caused in Pennsylvania by an act or omission outside the Commonwealth.

As to the second part, for a Court to find personal jurisdiction without conflicting with the Due Process Clause, a plaintiff must demonstrate that the defendant has purposefully directed its activities toward the residents of the forum state, see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, or otherwise "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Here, State Farm argues that the Court has specific jurisdiction, meaning that the cause of action is related to or arises out of the defendants' contacts with the forum. (See Pls.' Response in Opp'n. 9.) For the exercise of specific jurisdiction to be proper, first the plaintiff must establish that the defendants have sufficient minimum contacts with the forum, and second the Court must determine whether exercising jurisdiction "would comport with 'traditional notions of fair play and substantial justice.' " IMO Indus., 155 F.3d at 259 (quoting Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 150-51 (3d Cir. 1996)).

As to the minimum contacts requirement, in Calder v. Jones, the Supreme Court concluded that there are sufficient minimum contacts to satisfy due process where a defendant is alleged to have caused an injury in the forum state through an intentional tort, even if the acts

---

3. (...continued)
Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

themselves occurred entirely outside the forum state. 465 U.S. 783 (1984); see also Tannenbaum v. Brink, 119 F. Supp. 2d 505, 510 (E.D. Pa. 2000) ("It is well-established that directing tortious activity at a forum can be enough to establish minimum contacts for due process purposes.")  The Third Circuit has elaborated on the Calder test, establishing a three part inquiry:

> First, the defendant must have committed an intentional tort.  Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort.  Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

IMO Indus., 155 f.3d at 256.  Here, by stating that the Moving Defendants' actions were "malicious and outrageous," State Farm has alleged that the Moving Defendants committed an intentional tort.  The injury is alleged to have been suffered by State Farm here in Pennsylvania, which is where State Farm sought to enforce the judgment.  Finally, the alleged acts—liquidating MFP to avoid paying the Pennsylvania judgment—were "expressly aimed" at the forum state.

Furthermore, exercising jurisdiction would not violate traditional notions of fair play and substantial justice.  The Moving Defendants, located in New York, would not be overly burdened by defending the action here.  Pennsylvania has a clear interest in insuring that fraud does not take place within its borders.  It would also be convenient and efficient for both State Farm and the judicial system to have the litigation continue in this forum. See Burger King, 471 U.S. at 476-77 (setting forth the following factors to weigh in determining whether jurisdiction comports with traditional notions of fair play and substantial justice: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the

9

most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945) (internal quotation marks omitted))).

Therefore, the Court concludes that the Pennsylvania long-arm statute is satisfied and, by exercising jurisdiction over the Moving Defendants, there would be no violation of the Due Process Clause.

### 3. Subject Matter Jurisdiction

Defendants Yeshiva Shearith Hapleth, Yeshiva Yesode Hatorah,[4] and Tz'Doko V'Chesed of Klausenberg argue that there is no subject matter jurisdiction because the Complaint does not seek damages in excess of $75,000, the statutory threshold for diversity jurisdiction under 28 U.S.C. § 1332.

To determine whether a plaintiff has satisfied the amount in controversy requirement, a court must look to the face of the complaint and examine it for good faith. Packard v. Provident Nat. Bank, 994 F.2d 1039, 1045-46 (3d Cir. 1993).[5] For a court to conclude that claims are not made in good faith, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). Claims for punitive damages may be aggregated with claims

---

4. Beth Chana, the third of the Moving Defendants, does not join in this part of the motion. The Complaint alleges that Beth Chana received transfers of $194,000. This amount obviously exceeds the $75,000 amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332.

5. Defendants Yeshiva Shearith Hapleth, Yeshiva Yesode Hatorah, and Tz'Doko V'Chesed of Klausenberg point out that State Farm fails to state an exact amount of damages that exceeds the amount in controversy threshold. While this is true, the Third Circuit has held that a claim that does not spell out the exact damages—an "open ended complaint"—is "not measured by the low end . . . , but rather by a reasonable reading of the value of the rights being litigated." Angus v. Shiley Inc., 989 F.2d 142, 146 (3d Cir.1993). Thus, it is incumbent upon the Court here to determine what such a reasonable reading might be.

for compensatory damages unless the punitive damages are "patently frivolous and without foundation," such as if "they are unavailable as a matter of state substantive law." In re Corestates Trust Fee Litig., 39 F.3d 61, 64 (3d Cir. 1994); Packard, 994 F.2d at 1046 (3d Cir. 1993). However, "when it appears that such a claim comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily for the purpose of conferring jurisdiction, that claim should be given particularly close scrutiny." Packard, 994 F.2d at 1047 (citing Zahn v. Int'l Paper Co., 469 F.2d 1033, 1033-34 n.1 (2d Cir. 1972)).

According to the Complaint, Yeshiva Shearith Hapleth, Yeshiva Yesode Hatorah, and Tz'Doko V'Chesed of Klausenberg received financial transfers of $11,000, $23,350, and $65,300, respectively. (Compl. ¶ 15.) If this were the extent of the damages State Farm sought, clearly the claims against these defendants would not meet the amount in controversy requirement.[6] However, State Farm also seeks punitive damages. (See Compl. 30, 38.) Under Pennsylvania law, punitive damages are generally allowable when the claim is "based on conduct which is malicious, wanton, reckless, willful, or oppressive." Feld v. Merriam, 485 A.2d 742, 747-48 (Pa.1984) (internal quotation marks omitted). This standard has been applied in the specific context of claims brought under the Pennsylvania Uniform Fraudulent Transfer Act. See, e.g., UGI Corp. v. Piccione, No. 88-CV-1125, 1997 WL 698011, at *8-9 (E.D. Pa. Nov. 5, 1997).

---

6.   State Farm also urges the Court to find supplemental jurisdiction under 28 U.S.C. § 1367, assuming arguendo that the amount in controversy requirement has not been met as to some of the defendants. However, under 28 U.S.C. § 1367, the rule remains that a plaintiff must allege that the amount in controversy exceeds $75,000 as to each defendant. See 15 Moore's Federal Practice, § 102.108[2] (Mathew Bender 3d ed.). While the Third Circuit has remained silent, other courts have held that claims may be aggregated against multiple defendants, but only when the plaintiff alleges joint liability. See id. n.6 (listing cases); see also Hayfield v. Home Depot U.S.A., Inc., 168 F. Supp. 2d 436, 447 (E.D. Pa. 2001) (noting the Third Circuit's silence on this exception to the rule and reviewing out-of-circuit cases). Here, State Farm has not alleged joint liability; therefore, even if the Court concluded that such aggregation was possible, it would not apply to these facts.

Therefore, because State Farm has alleged malicious conduct on the part of the Moving Defendants, punitive damages are available as a matter of law.

Furthermore, here, there is no indication in the Complaint that punitive damages were asserted for the sole purpose of conferring jurisdiction. While punitive damages would comprise the bulk of any award exceeding the statutory minimum against Yeshiva Shearith Hapleth and Yeshiva Yesode Hatorah, we cannot conclude to a legal certainty—assuming the facts alleged, as we must at this stage in the litigation—that State Farm would be unable to recover in excess of $75,000 against each defendant. Therefore, the judgment is not void for lack of subject matter jurisdiction. This conclusion also applies to Tz'Doko V'Chesed of Klausenberg, which is alleged to have wrongfully accepted $65,300.

Because service of process was proper and the court had both personal and subject matter jurisdiction over all the defendants, the default judgments will not be vacated as void. We must therefore next consider whether to exercise our discretion and vacate the judgment.

### B. Whether to Vacate in the Court's Discretion

In deciding whether to vacate a default judgment because of "mistake, inadvertence, surprise, or excusable neglect," the Court must consider three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. Gold Kist, Inc. v. Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir. 1985). While default judgments are generally disfavored, the decision to vacate is committed to the sound discretion of the Court. Hritz v. Woma Corp., 732 F.2d 1178, 1180-81 (3d Cir. 1984).

As to the first factor, it is clear that there will be little prejudice to State Farm. The case is still in the early stages of discovery, and, by adding the Moving Defendants, no significant delay is likely, nor is it likely that any evidence has been or will be compromised.

Whether there is a meritorious defense is a closer question. In their motion and memorandum, the Moving Defendants failed to specify any defense at all. In the attached declarations, there are sections titled "Meritorious Defense," but these sections do not make arguments on the merits. (See Herskovitz Decl. ¶¶ 12-18; Lipschitz Decl. ¶¶ 13-19; Wieder Decl. ¶¶ 12-17.) Rather, the argument seems to be that the Moving Defendants lack any information, that their investigations have proven fruitless, and therefore that they are unable to confirm or deny any of the allegations. (Herskovitz Decl. ¶¶ 14-16; Lipschitz Decl. ¶¶ 14-16; Wieder Decl. ¶¶ 13-15.) The Moving Defendants slightly clarified this at the hearing, during which they asserted that the transactions in question were innocent donations that did not render MFP insolvent. (Hr'g Tr. 34:4-21; 44:22-24.) Thus, the Moving Defendants appear to have a defense that, at this point, seems at least arguably meritorious.

Last, we must determine whether there has been any culpable conduct by the Moving Defendants. The Moving Defendants do not assert that they were unaware of the suit, and even after the default judgment had been entered, they waited from June 2007 until December 2007 to file their motion to vacate. At the hearing, the Moving Defendants explained their actions by claiming that, as nonprofit institutions, they lacked understanding of what the law required—or as counsel put it, "when people walk into not for profits they forget their brain at the door." (Hr'g Tr. 47:27-48:2; see also 16:1-18:18.) While this hardly excuses their behavior, the Court concludes, after carefully weighing all three factors and noting again the interest we

have in avoiding default judgments, that the judgment will be vacated and the case will proceed with the Moving Defendants.

    **D. Venue**

As to the first argument, in a diversity case, venue is proper "(1) where the defendant resides, (2) where a substantial part of the events giving rise to the claim occurred, or (3) where personal jurisdiction may be had over any defendant if no other venue is proper." Park Inn Intern., L.L.C. v. Mody Enters., Inc. 105 F. Supp.2 d 370, 375 (D.N.J. 2000) (summarizing 28 U.S.C. § 1401(a)(1)).  With respect to the second ground for venue, all of the events need not take place in a venue for it to be proper, nor even most of the events, just a substantial part. See id. at 376.  Here, the complaint clearly alleges that a substantial part of the events took place in this district, thus satisfying the requirements for venue.

The Moving Defendants make two arguments concerning venue:  first, that venue is not proper under 28 U.S.C. § 1391(a); and second that the Court should, in the alternative, exercise its discretion and transfer venue under 28 U.S.C. § 1404(a).

Under 28 U.S.C. § 1404(a) "a district court may transfer any civil action to any other district or division," based on the "convenience of parties and witnesses [or] in the interest of justice."  This decision is committed to the sound discretion of the district court. See Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000).  Transfer may only be ordered if the original venue and the requested venue are proper. Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995).  The Third Circuit has outlined a series of public and private interests to consider in making the decision whether or not to transfer venue. Id. at 879-80.

> The private interests include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. Id. at 879.  The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

Omega Fin. Servs., Inc. v. Innovia Estates & Mortg. Corp., No. 07-1470, 2007 WL 4322794, at *1 (D.N.J. Dec. 6, 2007) (citing Jumara, 55 F.3d at 879-80 (3d Cir. 1995)).  The plaintiff's choice of venue is owed deference "unless the balance is strongly tipped in favor of the defendant." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

### 1. Private Interest Factors

Here, State Farm has selected this district for understandable reasons.  It is the locus of all of the underlying acts in the fraud scheme.  According to the Complaint, all of the defendants participated in this scheme by maliciously assisting in the liquidation of MFP, a Pennsylvania corporation.  This liquidation was intended to frustrate the enforcement of a judgment by this Court, again in this district.  Many of the witnesses and much of the evidence are in this district.  Most obviously, all of the evidence concerning the underlying fraud scheme is located in this district.  In addition, State Farm, the plaintiff, has its local office and presumably its relevant personnel, in this district.  The only evidence and witnesses outside this district come from the defendants.  While the defendants will certainly have the expense of traveling to another district, the trip from the Eastern District of New York to the Eastern District of Pennsylvania is a relatively short one.  The Court is mindful that State Farm is a much larger organization, with

resources that seemingly make it easier for it to travel to litigate this case; however, that single factor in favor of Defendants does not tilt the private interest analysis, as a whole, in their favor.

### 2. Public Interest Factors

The public interest factors do not improve the calculus for the defendants. This Court is well equipped to settle this dispute, which is grounded on both Pennsylvania and New York state law. While there is no reason to think the Eastern District of New York would be unable to handle this case, there is no court congestion here that will prevent a timely disposition. Moreover, this district has a clear public policy of protecting Pennsylvania residents from fraud. And as discussed above, this forum appears at least as efficient a forum as the Eastern District of New York.

Considering the substantial deference owed to a Plaintiff's choice of forum, the Court concludes that this venue is proper and transfer is unwarranted. Therefore the venue transfer request is denied as to all parties.

### C. Forum Non Conveniens

The Moving Defendants' request for dismissal based on forum non conveniens is without merit. The Supreme Court has stated, "The common-law doctrine of forum non conveniens 'has continuing application [in federal courts] only in cases where the alternative forum is abroad. . . .' " Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping, 127 S. Ct. 1184, 1190 (2007) (quoting Am. Dredging Co. v. Miller, 510 U.S. 443, 449, n.2 (1994)). The Court explained that "Congress has codified the doctrine [of forum non conveniens] and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for

trial of the action." Id. at 1190-91 (citing 28 U.S.C. § 1404(a)). Here, none of the parties is foreign. Therefore, the doctrine of forum non conveniens is inapplicable.[7]

**IV. CONCLUSION**

For the reasons stated above, the Court vacates the default judgments as to the Moving Defendants, but denies all the arguments for dismissal as to all of the defendants, as well as the request that the venue be transferred to the Eastern District of New York.

---

7. Even if the forum non conveniens analysis was applicable, it involves the same basic factors as those considered in the section 1404(a) analysis, but requires a greater showing by the moving party. See Omega Fin. Servs., 2007 WL 4322794, at *4 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981)). As discussed in the preceding section, the private and public interest factors do not outweigh the presumption in favor of Plaintiff State Farm's choice of forum.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM MUTUAL,     AUTOMOBILE INSURANCE     COMPANY, and | : : : : | CIVIL ACTION<br><br>NO. 06-3040 |
| STATE FARM FIRE AND     CASUALTY COMPANY | : : : | |
|           Plaintiffs, | : : | |
| v. | : : | |
| TZ'DOKO V'CHESED OF     KLAUSENBERG, BETH CHANA, YESHIVA CHATZAR HAKODESH., YESHIVA SHEARITH HAPLETH, and YESHIVA YESODE HATORAH | : : : : : : : | |
|           Defendant. | : | |

### ORDER

**AND NOW**, on this 26th day of February, 2008, upon consideration of Defendants Beth Chana, Yeshiva Shearith Hapleth, and Yeshiva Yesode Hatorah's Motion to Vacate Default Judgment and Dismiss (Docket No.42) and Plaintiffs' Answer in Opposition (Docket No. 50); as well as Defendant Tz'Doko V'Chesed of Klausenberg's Motion to Dismiss or Transfer Venue (Docket No. 60) and Plaintiffs' Response (Docket No. 63), it is hereby **ORDERED** as follows:

1. Defendants Beth Chana, Yeshiva Shearith Hapleth, and Yeshiva Yesode Hatorah's Motion to Vacate is **GRANTED** and their Motion to Dismiss is **DENIED**.

2. Defendant Tz'Doko V'Chesed of Klausenberg's Motion to Dismiss is **DENIED**.

3.   The request by Defendants Beth Chana, Yeshiva Shearith Hapleth, Yeshiva Yesode Hatorah, and Tz'Doko V'Chesed of Klausenberg that venue be transferred is **DENIED**.

                              BY THE COURT:

                              *s/ Ronald L. Buckwalter*
                              RONALD L. BUCKWALTER, S.J.